**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:11-CR-0002** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **SHAMAR L. BANKS** | : | |

**MEMORANDUM**

Presently before the court in the above-captioned matter is petitioner

Shamar Banks's ("Banks") motion to vacate, set aside, or correct his sentence (Doc.

69) pursuant to 28 U.S.C. § 2255,[1] alleging a denial of procedural due process in

violation of the Fifth Amendment and ineffective assistance of counsel in violation

of the Sixth Amendment to the United States Constitution.  For the reasons that

follow, the court will deny Banks's motion.

**I.      Factual Background and Procedural History**

On January 5, 2011, Banks was indicted for (1) distribution and possession

with intent to distribute 280 grams or more of cocaine base and cocaine

hydrochloride in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, (2) possession of

a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(I)

and 18 U.S.C. § 2, and (3) being a felon in possession of a firearm in violation of 18

U.S.C. § 922(g)(1) and 18 U.S.C. § 2.  (Doc. 1).  On June 29, 2011, Banks agreed to

plead guilty to a superseding felony information for distribution and possession

---

[1] "A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence."  28 U.S.C. § 2255.

with intent to distribute 280 grams or more of cocaine base and cocaine hydrochloride pursuant to a written plea agreement. (Doc. 34). On July 20, 2011, the court conducted a change of plea hearing, in which Banks entered a guilty plea after the court apprised him of the consequences of entering a guilty plea. (Docs. 41, 65).

Prior to sentencing, the probation officer filed a pre-sentence report recommending a two-level enhancement for reckless endangerment. See U.S.S.G. § 3C1.2. On February 27, 2012, the court held a sentencing hearing and concluded that Banks's actions in the course of fleeing from law enforcement warranted the reckless endangerment enhancement under U.S.S.G. § 3C1.2. (Doc. 66 at 55-56). The court sentenced Banks to 198 months of imprisonment and three years of supervised release. (Doc. 61). Lori Ulrich, Esq. ("trial counsel"), from the Federal Public Defender's Office, represented Banks from indictment through sentencing. (Doc. 69 at 2; Doc. 74 at 3).

On March 9, 2012, Banks appealed his sentence on grounds that the court committed procedural error by applying the reckless endangerment enhancement. (Doc. 62). On January 4, 2013, the Third Circuit affirmed the court's application of the sentencing enhancement and Banks's sentence. (Doc. 67); see United States v. Banks, 490 F. App'x 484 (3d Cir. 2013).

On December 30, 2013, Banks timely filed the instant motion (Doc. 69) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Banks first asserts that the application of the reckless endangerment enhancement violated his

procedural due process rights under the Fifth Amendment.  (Doc. 69 at 10-14).  The

government opposes this motion as an attempt to merely relitigate the sentencing

enhancement.  (Doc. 74 at 9).  Second, Banks contends that he received ineffective

assistance of counsel in violation of the Sixth Amendment during plea negotiations.

(Doc. 69 at 3,4, 14-18).  The government argues that any deficient performance by

Banks's trial counsel did not cause him prejudice to warrant vacating his sentence.

(Doc. 74 at 10-11).  The motion has been fully briefed and is ripe for disposition.

## II.   **Legal Standard**

A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 is the

appropriate vehicle by which a defendant in federal custody may challenge the

legality of a conviction or sentence.  See 28 U.S.C. § 2255; In re Dorsainvil, 119 F.3d

245, 249 (3d Cir. 1997).  When reviewing a motion to vacate, the court must accept

the truth of the petitioner's factual allegations unless clearly frivolous based on the

existing record.  Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  Where the

record affirmatively indicates that petitioner's Section 2255 claim is without merit,

the claim may be decided on the record without a hearing.  See 28 U.S.C. § 2255(b);

Gov't of V.I. v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).  If the record

conclusively contradicts the facts asserted in support of a Section 2255 motion, or if

petitioner would not be entitled to relief as a matter of law even if the facts as

alleged are true, the reviewing court does not commit an abuse of discretion by

declining to conduct an evidentiary hearing.  See Nicholas, 759 F.2d at 1075.

III.    Discussion

In the instant motion, Banks seeks to vacate his conviction and sentence for two main reasons.  First, Banks contends that the court violated his procedural due process rights in applying a two-level sentencing enhancement for reckless endangerment under U.S.S.G. § 3C1.2.[2]  (Doc. 69 at 10-14).  Second, Banks alleges that his guilty plea was not voluntary due to ineffective assistance of counsel based upon the following acts or omissions of trial counsel: (1) trial counsel told Banks that he would receive a sentence of no more than ten years; (2) trial counsel failed to inform Banks that a guilty plea would result in the loss of substantial collateral rights; and (3) trial counsel failed to inform Banks that his prior state convictions could affect his sentence.  (Id. at 3-4, 14-18).  The court will address these claims *seriatim*.

A.    **Procedural Due Process**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V.  To satisfy procedural due process requirements, the government must give a defendant "notice and an opportunity for hearing appropriate to the nature of the case." United States v. Ausburn, 502 F.3d 313, 322

---

[2] As previously noted, the government argues that Banks merely seeks to relitigate the court's application of the reckless endangerment enhancement.  (Doc. 74 at 9).  Banks responds that the instant motion challenges the fundamental fairness of the procedures used by the court rather than the mere application of the sentencing enhancement.  (Doc. 75 at 1).  As a result, the court will consider Banks's procedural due process claim.

(3d Cir. 2007) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). In the criminal context, "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." Id. (quoting Gardner v. Florida, 430 U.S. 349, 358 (1977)); United States v. Mannino, 212 F.3d 835, 845-46 (3d Cir. 2000) ("Obviously, a criminal defendant must be afforded due process at sentencing.").

In the case *sub judice*, Banks does not contest the notice requirement; rather, he focuses on the adequacy of the sentencing hearing. At sentencing, this court follows a three-step process. (Doc. 66 at 3-4); see Gall v. United States, 552 U.S. 38 (2007). The court first calculates a defendant's advisory Guidelines sentencing range based upon a pre-sentence report prepared by the probation officer. Id. at 49. Second, the court permits both parties to submit objections and to suggest an appropriate sentence. Id. Finally, the court considers each of the sentencing factors enumerated in 18 U.S.C. § 3553(a). Id. at 49-50.

A sentencing court need not afford a defendant the full panoply of due process rights that accompanies a full trial. See United States v. Palma, 760 F.2d 475, 477 (3d Cir. 1985). However, the defendant must have the opportunity to comment on the alleged factual predicate for his sentence and the punishment which may be imposed. Ausburn, 502 F.3d at 322. Thereafter, the court may make factual findings by a preponderance of the evidence that do not increase a sentence beyond the statutorily prescribed maximum. See United States v. Grier, 475 F.3d 556, 565-66 (3d Cir. 2007) (stating that "the right to proof beyond a reasonable doubt

does not apply to facts relevant to enhancements under an advisory Guidelines regime").

Banks argues that he was denied due process at sentencing because the court applied a two-level sentencing enhancement for reckless endangerment unsupported by a preponderance of the evidence. (Doc. 69 at 10). The court disagrees.

The court conducted an extensive hearing regarding the sentencing enhancement. A reckless endangerment enhancement is warranted when "the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. Two law enforcement officers testified that, on July 8, 2010, they pursued Banks through a residential neighborhood in close proximity to an elementary school, a college, a public park, and a commercial area. (Doc. 66 at 6-8, 13-16). Both officers noted that there was significant amount of pedestrian traffic and streets lined with parked cars, limiting sight lines and reducing visibility. (Id. at 13-16, 33, 41-42). Sergeant Veater, a York city police officer, joined several other police vehicles to pursue Banks in a marked police vehicle with his lights and sirens activated. (Id. at 37-39, 48). Sergeant Veater estimated that Banks was traveling between forty and fifty miles per hour in a neighborhood with a speed limit of twenty-five miles per hour. (Id. 40, 52). Sergeant Veater also observed that Banks failed to stop at several stop signs. (Id.)

The court notes that Banks's trial counsel cross-examined both of the government's witnesses and presented an argument on Banks's behalf. (Id. at 17-25, 43-47, 52-53). After consideration of the testimony and both parties' arguments, the court determined that Banks's excessive speed—and failure to stop at multiple stop signs—in a residential neighborhood satisfied the requirements of the reckless endangerment enhancement. (Id. at 55-56). The issues were fully litigated at the sentencing hearing, and defense counsel had ample opportunity to present evidence, question witnesses, and present argument. Clearly, there were no procedural due process violations.

### B.      Ineffective Assistance of Counsel

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The right to effective assistance of counsel extends to the plea negotiation process. Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012) (stating that the right to counsel extends to all critical stages of criminal proceedings, including arraignments, post-indictment interrogations and entry of a guilty plea). In assessing the validity of a guilty plea, the court generally considers "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). When a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985)

(quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  This standard is identical to the standard applicable to ineffective assistance of counsel claims.  Hill, 474 U.S. at 58-59.

In Strickland, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. Strickland, 466 U.S. at 687-88.  A petitioner must demonstrate: (1) that his or her counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice.  See id.

In evaluating the first prong of the Strickland test, the court must be "highly deferential" toward counsel's conduct.  Id. at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  Id.  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id.

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  See Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  In the context of a guilty plea, the court focuses on whether trial counsel's deficient performance affected the outcome of the plea negotiation process.  See Hill, 474 U.S. at 59 ("[I]n order to satisfy the 'prejudice' requirement,

8

the defendant must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going

to trial."); Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013).

To prevail on a claim for ineffective assistance of counsel, a petitioner must

satisfy both prongs of the Strickland test. Carpenter v. Vaughn, 296 F.3d 138, 149

(3d Cir. 2002). The inquiry may begin with either the deficient performance or

prejudice prong, and the court is not required to consider the second prong of the

test if the petitioner is unable to satisfy the first one. Strickland, 466 U.S. at 697;

United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

In the instant motion, Banks asserts that trial counsel made certain

misrepresentations and omissions related to his guilty plea and thereby denied him

the effective assistance of counsel. Specifically, Banks alleges that (1) trial counsel

stated that "the maximum sentence he would face as a result of a guilty plea was

ten years' imprisonment," (2) trial counsel never informed him of "the true nature

of the use of prior state convictions" in calculating his sentence, and (3) trial counsel

did not advise him that a guilty plea would result in the loss of substantial collateral

rights. (Doc. 69 at 3-4). But for the alleged misrepresentations, Banks would not

have pleaded guilty and instead would have insisted upon proceeding to trial. (Id.

at 4). The court finds each of these grounds unavailing.

In plea negotiations, defense counsel must "give a defendant information

sufficient 'to make a reasonably informed decision whether to accept a plea offer.'"

Shotts, 724 F.3d at 376 (quoting United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992)).

When a defendant considers an offer of a plea agreement, a reasonably competent defense counsel will typically gather all of the facts and make an estimate of a likely sentence. See Hill, 474 U.S. at 56-60. However, this analysis must simply be undertaken in good faith; defense counsel need not provide a precisely accurate prediction of the consequences of a guilty plea or trial. McMann, 397 U.S. at 769-71.

When the court conducts an adequate plea hearing, an erroneous prediction or assurance by defense counsel regarding the likely sentence generally does not constitute grounds for invalidating a guilty plea. See United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) ("Defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion."); United States v. Jones, 336 F.3d 245, 254 (3d Cir. 2003) (finding that counsel was not ineffective for allegedly promising the defendant a lower sentence where the defendant was advised in an open-court colloquy of the maximum sentence); Lee v. United States, No. 1:06-CR-267, 2010 WL 2471750, at *2 (M.D. Pa. June 16, 2010) (same). A plea hearing eliminates any arguable prejudice from an earlier estimate because the court is required to advise the defendant of the minimum and maximum imprisonment range and provide other necessary information about the sentencing process. Sepulveda v. United States, 69 F. Supp. 2d 633, 641 (D.N.J. 1999) (collecting cases).

Upon a review of the record, the court finds that Banks was fully apprised of the possibility of a sentence greater than ten years prior to entering his guilty plea.

First, the plea agreement clearly states the possibility of a maximum sentence of twenty years. (Doc. 34 at 2, 4). The plea agreement also recognizes that the court is not bound by the plea agreement or any recommendations by the parties. (Id. at 17). "The Court is free to impose upon the defendant any sentence up to and including the maximum sentence of imprisonment for 20 years, a fine of $1,000,000, a maximum term of supervised release of up to three years, . . . the costs of prosecution, denial of certain federal benefits and assessments totaling $100." (Id.)

Second, the court conducted a change of plea hearing, in which Banks testified under oath that he read and fully understood the terms of his plea agreement. (Doc. 65 at 2, 8-9). Banks also informed the court that he was "greatly satisfied" with trial counsel's representation. (Id. at 5).

Third, in summarizing the terms of the plea agreement, the government expressly noted that Banks agreed to plead guilty to one count of possession with intent to distribute crack cocaine and cocaine hydrochloride and that the offense carried a maximum punishment of twenty years. (Id. at 9-10). Thereafter, the court asked Banks whether anyone promised or offered him anything in exchange for the guilty plea. (Id. at 12). Banks confirmed that he was pleading guilty of his own free will. (Id. at 12, 13). The court also asked Banks on more than one occasion whether he understood that the maximum term of imprisonment for the offense was twenty years. (Id. at 15, 17). Banks responded affirmatively to the court's inquiries. (Id. at 15, 18).

Next, Banks affirmed that he understood that no one could guarantee him a

particular sentence and that the terms of the plea agreement were merely

recommendations. (Id. at 13). The court further explained that it could reject the

terms of the plea agreement and impose a greater sentence. (Id.) Upon noticing

some hesitation from Banks, the court even provided a hypothetical to demonstrate

the extent of the court's discretion in imposing sentence:

> Q:    Do you understand that no one can guarantee you what
>       sentence you will get from me?
>
> A:    Yes.
>
> Q:    And are you doing this of your own free will?
>
> A:    Yes, sir.
>
> Q:    Do you understand that the terms of the plea agreement are
>       simply recommendations, and that I can reject the
>       recommendations without permitting you to withdraw your plea
>       of guilty and impose a sentence which is more severe than you
>       may anticipate?
>
> A:    Yes.
>
> Q:    Well, you're hesitating, so let me explain in some more detail.
>
> A:    Please.
>
> Q:    One of the things that the attorneys have agreed upon are drug
>       quantities. I don't have to accept -- those are simply
>       recommendations to the court. I don't have to accept those
>       recommendations, and I can find that the drug quantities are
>       greater than what they are recommending that the court find as
>       the appropriate drug quantities in your case. Does that help?
>
> A:    Yes.
>
> Q:    Do you now understand what I mean --

A:      Yes.

Q:      -- by the fact that the terms of the plea agreement are only
        recommendations and that I can reject them?

A:      Yes, I believe what you say.

(Id. at 13-14).

Finally, the court repeated these inquiries in its explanation of the

sentencing process and Banks once again confirmed his understanding.  In

particular, Banks stated that he understood that counsel for both parties may

recommend a sentence, but that the court need not accept such recommendations.

(Id. at 17).  He acknowledged that the Guidelines sentencing range is merely

advisory and that the court may impose a more severe sentence.  (Id. at 18).

Moreover, Banks plainly understood that he could not withdraw his guilty plea

based upon a disparity between the court's calculation of the Guidelines range and

a prior estimate from his counsel.  (Id. at 17).

Banks argues, however, that such evidence is not dispositive because his trial

counsel advised Banks that, if he answered "yes" to each of the court's inquiries, he

would receive a sentence of no more than ten years.  (Doc. 69 at 4; Doc. 75 at 1).

This argument is unavailing.  As a general rule, "[s]olemn declarations in open

court carry a strong presumption of verity" that creates a "formidable barrier in

any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74

(1977); see also Thielemann v. United States, No. 07-91-SLR, __ F. Supp. 2d __, 2013

WL 6506168, at *2 (D. Del. Dec. 12, 2013).  As described above, the court conducted

an extensive and detailed change of plea hearing in this case.  Upon its conclusion,

the court determined that Banks was "fully alert, competent, and capable of

entering an informed plea, and that this plea is a knowing and voluntary plea,

supported by an independent basis in fact."[3]  (Doc. 65 at 22).  Because Banks offers

no compelling reason to disregard his sworn statements in the change of plea

hearing, he is bound by his representations and therefore cannot demonstrate

prejudice for an ineffective assistance of counsel claim.

Banks next alleges that he was not aware that his guilty plea would trigger

substantial collateral consequences affecting his individual liberties.  (Doc. 69 at 15,

18).  It is well-established that defense counsel has a "critical obligation" to advise a

defendant of "the advantages and disadvantages of a plea agreement."  Padilla v.

Kentucky, 559 U.S. 356, 370 (2010) (quoting Libretti v. United States, 516 U.S. 29, 50-

51 (1995)).  In particular, defense counsel must apprise a defendant of the direct

consequences of a guilty plea, such as the likelihood of deportation and any

applicable maximum sentence.  Brady v. United States, 397 U.S. 742, 755 (1970); see

also Padilla, 559 U.S. at 369; United States v. Salmon, 944 F.2d 1106, 1130 (3d Cir.

1991); United States v. Oyeyinka, No. 95-2675, 1998 WL 964222, at *1 (E.D. Pa. Oct.

9, 1998) (citing Fruchtman v. Kenton, 531 F.2d 946, 948-49 (9th Cir. 1976)).

---

[3] The court also notes that Banks did not simply answer each question
affirmatively.  The transcript from the change of plea hearing clearly shows Banks
elaborated upon his answers as he deemed appropriate.  (See Doc. 66).

However, the court does not require defense counsel to notify a defendant of every collateral consequence accompanying a guilty plea. <u>See</u> <u>Padilla</u>, 559 U.S. at 375-77 (Alito, J., concurring); <u>Parry v. Rosemeyer</u>, 64 F.3d 110, 113 (3d Cir. 1995); <u>Oyeyinka</u>, 1998 WL 96422, at *1. Collateral consequences of a guilty plea are those that are unrelated to the length or nature of the sentence imposed on the basis of the plea. <u>Kincade v. United States</u>, 559 F.2d 906, 909 (3d Cir. 1977). Such collateral consequences include civil proceedings leading to commitment, loss of good time credit, loss of the right to vote and travel abroad, and the possibility of undesirable discharge from the armed service. <u>See</u> <u>Oyeyinka</u>, 1998 WL 96422, at *1 (citing <u>Fruchtman</u>, 531 F.2d at 949); <u>see, e.g.</u>, <u>Parry</u>, 64 F.3d at 113 (holding that counsel not required to inform defendant of collateral consequence of imprisonment that could result from a violation of parole).

Here, Banks does not identify the loss of any specific collateral right for the court's consideration. There was no appellate waiver in the plea agreement and Banks did not waive his right to attack collaterally any aspect of the proceedings. (<u>See</u> Doc. 34). Moreover, the potential loss of collateral civil rights was explicitly discussed during the change of plea hearing. (Doc. 65 at 14-15). The court asked Banks, "Do you understand that you are entering a plea to a felony and that you will be adjudged guilty of a felony, which may deprive you of valuable civil rights such as the right to vote, hold public office, serve on a jury, possess a firearm, or hold a professional license?" (<u>Id.</u> at 14). Banks responded, "Yes." (<u>Id.</u>) Thus, the

court finds that Bank fails to demonstrate satisfy either prong of an ineffective

assistance of counsel claim related to the collateral consequences of a guilty plea.

Lastly, Banks argues that trial counsel did not advise him of the potential

effect of his prior criminal history on the calculation of his sentence. (Doc. 69 at 16,

18). The Third Circuit has held that "a defendant has the right to make a

reasonably informed decision whether to accept a plea offer" and that "[k]nowledge

of the comparative sentence exposure between standing trial and accepting a plea

offer will often be crucial to the decision whether to plead guilty." Day, 969 F.2d at

43; United States v. Purcell, 667 F. Supp. 2d 498, 510 (E.D. Pa. 2009), aff'd, 517 F.

App'x 79 (3d Cir. 2013).

In this case, however, Banks clearly made an informed decision to plead

guilty. The court squarely addressed the issue of prior convictions during the

change of plea hearing. The court asked Banks whether he understood that a prior

conviction can affect the Guidelines sentencing range. (Doc. 65 at 16). Banks

responded affirmatively. (Id.) Thereafter, the court noted that Banks had

previously been subject to supervision for a prior crime. (Id.) The court informed

Banks that his guilty plea may operate as an admission that Banks violated any

supervision in effect when he committed the instant offense. (Id.) Because the

court clearly notified Banks of the relevance of his prior criminal history, Banks

cannot demonstrate prejudice resulting from the alleged omissions of trial counsel.

Accordingly, the court rejects Banks's ineffective assistance of counsel claim and

finds that Banks's guilty plea was both knowing and voluntary.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, the court will deny Banks's motion (Doc. 69) to

vacate, set aside, or correct his sentence.  An appropriate order shall issue.


                                    /S/ CHRISTOPHER C. CONNER
                                    Christopher C. Conner, Chief Judge
                                    United States District Court
                                    Middle District of Pennsylvania


Dated:          August 14, 2014